UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ECO-FUELS LLC,

Plaintiff,

-against-

DR. MOINUDDIN SARKER, and WASTE
TECHNOLOGIES, LLC,

Defendants.

Civil Action No.: 1:22-cv-250

**DECLARATION OF MOSES KAHAN**

STATE OF NEW YORK)
COUNTY OF KINGS    ) ss.

Moses Kahan, being duly sworn, deposes and says the following under the penalty of perjury:

1.    I am the managing member of the Plaintiff, Eco-Fuels LLC, and as such I am familiar with the facts and circumstances of this case. I submit this declaration in support of Plaintiff application for a default judgment against the Defendants Dr. Moinuddin Sarker ("Sarker" or "Individual Defendant") and his wholly-owned company, solely and exclusively controlled by Sarker, Waste Technologies, LLC ("Waste Technologies" or "Company Defendant") (together the "Defendants").

2.    Defendants' fraud was perpetuated when Defendants, Dr. Moinuddin Sarker and Waste Technologies, LLC, entered into a contract with the Plaintiff, Eco-Fuels LLC, and made material misrepresentations to Plaintiff in order to induce Plaintiff to enter into the contract.

3.    Defendants induced Plaintiff into entering a contract by making false representations concerning (i) Defendant's Sarker's ownership interest in Waste Technologies, LLC; and (ii) Defendant's ownership in certain patents and patent applications.

4.      In 2019, Dr. Sarker approached the principals of Eco and offered to develop, construct, and manufacture a machine that would convert plastic waste into fuel (the "Machine").

5.      In July 2019, Dr. Sarker, WTL, and Eco entered into a handwritten, two-page memorandum of understanding which, on October 2, 2019, was voided and replaced by a subsequent agreement which consisted of an Agreement and Addendum A (collectively, the "Contract"). A copy of the October 2, 2019 Contract is attached hereto as **Exhibit A**.

6.      On December 22, 2019, the Contract was amended by an Addendum B which had been attached to the Contract (the "Addendum B"). A copy of the December 22, 2019 Addendum B is attached hereto as **Exhibit B**.

7.      The Contract and Addendum B provide that Dr. Sarker and WTL would assemble and build the Machine that would convert plastic waste into fuel, and that the Machine would be delivered completely operational within 60 days.

8.      In the Contract and Addendum B, Dr. Sarker made certain material representations replied upon by the Plaintiff.

9.      Dr. Sarker represented that "he has sole ownership rights in Natural State Research, Inc."

10.     Upon information and belief, this is false and Dr. Sarker does not have the sole ownership rights in Natural State Research, Inc.

11.     In fact, subsequent to the finalization of the Contract and Addendum B, the Plaintiff learned from the executor of Dr. Kaufman's estate that Dr. Sarker has no ownership interest at all in Natural State Research, Inc.

12.     Dr. Sarker represented that Natural State Research, Inc. owns U.S. Pat. No. 9,404,046 issued on August 2, 2016, and U.S. Pat. No. 8,927,797 issued January 6, 2015.

2

13. Subsequent to the Contract and Addendum B, the Plaintiff was notified by the executor of Dr. Kaufman's estate that the aforesaid Patents were in fact owned by Dr. Kaufman and/or her estate and that at no time did Dr. Kaufman or her estate transfer or otherwise assign the patents to Dr. Sarker. See email attached as **Exhibit C** from attorney Barbara L. MacGrady, Esq. from the law-firm of Davidson, Dawson & Clark LLP handling Dr. Kaufman's estate.

14. Pursuant to the second and last paragraph of page one of the Contract, Dr. Sarker obligated himself to "Within Two(2) months of the signing of this Agreement, [Dr. Sarker] will train and teach Eco's[Plaintiff's] engineer with the operational and maintenance and upkeep of the Machine."

15. Pursuant to the terms of the Agreement and Addendum B, the Plaintiff paid to WTL a total sum of Two Hundred Thousand ($200,000.00) dollars.

16. To date, notwithstanding the Plaintiff's repeated demands, Dr. Sarker has refused to provide any training and/or instruction whatsoever to Plaintiff's engineer regarding the operation and/or maintenance of the Machine.

17. Addendum B provides that "the Machine must be one hundred (100%) percent build and functioning within sixty(60) days from the date the Addendum B is signed."

18. Addendum B was signed on December 22, 2019, and as such, the 60 day time-period has lapsed on February 20, 2020.

19. Notwithstanding the expiration of the 60 day timeframe, the Machine was not one hundred (100%) percent built and functioning by February 20, 2020, and to Plaintiff's knowledge, nor at anytime thereafter.

20. Pursuant to the third paragraph on page 2 of the Agreement, "If Doctor [Dr. Sarker] does not fully comply with any of the timeframe obligations set forth in this agreement,

3

all payment shall be suspended until the Machine is delivered to the Plaintiff fully functioning and operational."

21.    Accordingly, on February 23, 2020, Plaintiff suspended all further payments.

22.    Pursuant to paragraph 5 on page 2 of the Contract, Dr. Sarker was obligated to obtain and maintain liability insurance.  Specifically, the Contract provides that:

"Doctor represents that he has and will maintain at all times professional liability insurance at its own cost and expense, including  a comprehensive general liability insurance policy covering all of Doctor's activities under this Agreement, in an amount no less than Five Million Dollars ($5,000,000) per occurrence, unless otherwise expressly agreed by the Parties (the "Insurance Policy"); and this amount shall not be less than as required by any applicable regulatory agency. Doctor shall provide Eco with written notice at least fifteen (15) days prior to any cancellation or material change in such Insurance Policy. Doctor shall maintain such Insurance Policy during the Term of this Agreement and beyond the expiration or termination of this Agreement for ten years. Eco shall be named as an "additional insured" on said Insurance Policy and Doctor shall promptly provide Eco with a certificate evidencing the same."

23.    Despite the Plaintiff's repeated demands for proof of insurance, Dr. Sarker has never provided Plaintiff with any proof of insurance whatsoever.

24.    Pursuant to Paragraph 4 of page 3 of the Agreement, Dr. Sarker obligated himself not to compete and/or engage in any interfering activities with Plaintiff.

25.    Notwithstanding this critical undertaking, Dr. Sarker competed and engaged in interfering activities by building another similar machine for others and by directing Plaintiff's independent contractor, Van Dyke, not to work on this project for the Plaintiff.

26.    The Contract and Addendum B provide that the installment payments were to be used for the purchase of material toward the manufacturing of the Machine.

27.    Dr. Sarker provided to the Plaintiff with a receipt from Henry Bloch, a non-party, purporting to demonstrate that he utilized installment money received from Plaintiff toward the purchase of material. A copy of the receipt is attached hereto as **Exhibit D**.

28.    Henry Block later notified the Plaintiff that the invoice provided was in fact fraudulent and that its contents were untrue.

29.    Pursuant to the Payment Schedule set forth on page 1 of the Addendum B, Third-2, Plaintiff agreed to make installment payments as follows:

"Twenty Five thousand ($25,000) Dollars after Doctor [Sarker] demonstrates that he used the entire " Third -1" payment for the purchase of material and that Eco [Plaintiff] physically inspected the raw materials and confirmed that the third payment in fact was used solely to purchase raw materials and that the Machine is fifty (50%) percent buil[t]."

30.    On January 31, 2020, Dr. Sarker invited Plaintiff to inspect the Machine in order to demonstrate that prior installment payment was utilized for material to build the Machine and that the Machine was 50% complete.

31.    However, upon inspection by the Plaintiff, only limited materials were strewn around the shop, and it did not appear that assembly of the Machine in earnest had even begun.

32.    After these deficiencies became apparent, Dr. Sarker requested that Plaintiff return for another inspection on February 18, 2020.

33.    Plaintiff performed another inspection on February 18, 2020, and while it seemed that some progress had been made, it was still not clear to what extent the materials had been purchased and 50% of the Machine's construction had still not been completed as required.

34.    Dr. Sarker refused to provide proof that the prior payment "Third-1" in the amount of $35,000 was used for the purchase of material to assemble the Machine.

35.    Dr. Sarker also informed the Plaintiff he would not be able to meet the 60-day timeframe set forth in Addendum B for the assembly of the Machine and would not have the Machine assembled by February 22, 2020.

36.    By letter dated February 23, 2020, the Plaintiff sent a notice of default, demanded that the default be cured, and suspended all further payments under the Contract and Addendum B.

37.    Dr. Sarker never cured the default under the Contract and Addendum B and has refused to return the money he received from Plaintiff.

38.    Upon information and belief, the bulk of the funds received from the Plaintiff were not used for the purchase of material and Machine assembly.

39.    Upon information and belief, Dr. Sarker used the money he received from Plaintiff to fund his lavish lifestyle, including but limited to international travel to the City of Mecca located in Saudi Arabia, Bangladesh, India and Europe.

40.    Plaintiff seeks to recover on the allegations set forth in the Complaint: 1) the penalties and liabilities incurred by Plaintiff as a result of Defendants' fraudulent conduct; 2) all payments made to Defendant Sarker under or pursuant to the Contract; 3) all payments made to Waste Technologies, LLC; 4) all payments made to third parties in connection with and pursuant to the contract; 5) pre and post judgment interest on all claims; 6) reasonable attorneys' fees and costs where available; and 7) such other and further relief as this Court deems necessary.

41.    I, on behalf of the Plaintiff, respectfully request the Court enter a default judgment as against both Defendants.

June 28, 2022

_____
Moses Kahan

Sworn to before me this
28 day of June, 2022

_____
NOTARY PUBLIC

Embossed Hereon Is My
Notary Public - State Of New York
My Commission Expires September 28, 2024
SAMUEL FIELDMAN

6