UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

ECO-FUELS LLC,

              Plaintiff,

   - against –

DR. MOINUDDIN SARKER and WASTE
TECHNOLOGIES, LLC,

              Defendants.

-----------------------------------X

**MEMORANDUM & ORDER**

22-CV-250(KAM)(JAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Eco-Fuels LLC ("Eco-Fuels" or "Plaintiff") brought this action against Dr. Moinuddin Sarker and Waste Technologies, LLC (together, "Defendants") alleging breach of contract, fraud, and unjust enrichment. Plaintiff seeks monetary damages, attorneys' fees and costs, and declaratory relief. Defendants failed to appear or otherwise defend this action. After the Clerk of the Court entered default against defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff filed the instant motion for entry of default judgment. For the reasons stated herein, Plaintiff's motion for entry of a default judgment is granted in part and denied in part pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Default judgment is granted against Defendants, jointly and severally, and Plaintiff is awarded $200,000.00 in damages, $72,352.44 in pre-judgment

interest as of February 26, 2024, and post-judgment interest from the date judgment is entered as prescribed in 28 U.S.C. § 1961.

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint, Motion for Default Judgment, supporting memorandum, and supporting declaration and affidavits. (*See* ECF No. 1, Compl.; ECF No. 17-8, Memorandum in Support of Motion for Default Judgment ("Mem."); ECF No. 17-3, Affidavit of Moses Kahan ("Kahan Aff."); ECF Nos. 17-4 through 17-7, Exhibits A through D to the Kahan Affidavit ("Aff. Exs. A-D"); ECF No. 20, Declaration of Moses Kahan ("Kahan Decl."); ECF Nos. 20-1 through 20-5, Exhibits A through E to the Kahan Declaration ("Decl. Exs. A-E").) Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except as to damages. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

## I.   Factual Background

Plaintiff Eco-Fuels LLC is a New York State limited liability company with two members – Moses Kahan ("Kahan"), the managing member, and Diana Glenn. (Kahan Decl. at ¶¶1, 7-8.) Both members of Eco-Fuels are New York domiciliaries. (*Id.* at ¶¶9-10.) Defendant Waste Technologies LLC ("Waste Technologies") is a Delaware limited liability company of which Dr. Moinuddin Sarker

2

("Sarker") is the sole member[1].   (*Id.* at ¶¶11-12.)   Sarker is domiciled in Connecticut.  (*Id.* at ¶13.)

Sarker approached the members of Eco-Fuels in 2019 and offered to "develop, construct, and manufacture a machine that would convert plastic waste into fuel" (the "Machine"). (Compl. at ¶29.) Plaintiff alleges that Sarker made representations both in meetings with Plaintiff and on the Waste Technologies website regarding his academic credentials and background in waste conversion to energy.  (*Id.* at ¶¶11-20.)  Plaintiff subsequently entered into a handwritten memorandum of understanding with Defendants in July 2019, which was replaced by a subsequent contract in October 2019 (the "Contract").  (*Id.* at ¶30.)  The contract was later amended in writing by the parties on December 22, 2019, via an addendum (the "Addendum").  (*Id.* at ¶31.)

The Contract represented that Defendants would "build such a [plastic-converting] Machine for [Eco-Fuels] within six (6) months from the date of this agreement" and that Defendants would subsequently "lease commercial space" and allow Eco-Fuels "access to the Space to operate the Machine for twelve months out of the space after delivery." (Aff. Ex. A at 1.)  Defendants also agreed to "train and teach [Eco-Fuel's] engineer with the operational and

---

[1] The Court notes that Kahan's sworn declaration regarding Sarker's status as the sole member of Waste Technologies is supported by the contract between the parties, which states that Sarker is the "sole owner of Waste Technologies LLC." (Aff. Ex. A at 1.)

maintenance and upkeep of the Machine" within two months of the signing of the agreement, and that such training would continue for six months after delivery of the Machine to Eco-Fuels. (*Id.*) The Contract further set out a payment schedule from Eco-Fuels to Defendants, noting that $50,000 had already been paid to Defendants by Eco-Fuels, that $100,000 would be due within three business days of the signing of the contract, and that progress payments of $400,000 would eventually be due following certain milestones in the development of the Machine. (*Id.* at 3.)

The parties' December 2019 Addendum modified the payment schedule for the Contract, noting that $165,000 had already been paid to Defendants by Eco-Fuels, that $35,000 would be due within five days of the signing of the Addendum, and that the subsequent progress payments would be modified. (Aff. Ex. B. at 1.) The Addendum also stated that "the [plastic-converting] Machine must be one hundred percent (100%) buil[t] and functioning within sixty (60) days from the date the Addendum B is signed." (*Id.*)

On January 31, 2020, Sarker invited Plaintiff to inspect the Machine in order to demonstrate that prior payments had in fact been used to purchase materials to build the Machine, and that the Machine itself was partially complete. (Kahan Aff. at ¶30.) Plaintiff did not find the inspection satisfying, however, finding "limited materials strewn around the shop," and Sarker requested that Plaintiff return for another inspection on February 18, 2020.

(*Id.* at ¶¶31-32.)   Upon Plaintiff's subsequent inspection on February 18, 2020, it appeared that "some progress had been made" but that the Machine was still not 50% complete.   (*Id.* at ¶33.) Sarker informed Plaintiff that he would not be able to meet the 60-day timeframe set forth in the Addendum for assembly of the Machine.   (*Id.* at ¶35.)   Plaintiff suspended its payments under the Addendum and Contract at that point, and sent a notice of default under the Contract by letter dated February 23, 2020.   (*Id.* at ¶36.)

Plaintiff alleges that "the bulk of the funds received from the Plaintiff were not used for the purchase of material and Machine assembly" but were instead utilized by Sarker to "fund his lavish lifestyle, including but [not] limited to international travel to the City of Mecca located in Saudia Arabia, Bangladesh, India, and Europe."   (*Id.* at ¶¶38-39.)   In total, Plaintiff paid Waste Technologies a total of $200,000 pursuant to the Contract and the Addendum.   (Kahan Decl. at ¶19.)

## II.  **Procedural Background**

Plaintiff commenced this action against Defendants on January 16, 2022.   (*See* Compl.)   Plaintiff's complaint alleges fraud, breach of contract and unjust enrichment, and seeks damages,

attorney's fees, and a declaratory judgment regarding ownership of the Machine[2].  (*See id.* ¶¶ 65-97.)

Plaintiff filed affidavits stating that Sarker was personally served with the summons and complaint twice – first on January 20, 2022, and subsequently on January 24, 2022.  (ECF Nos. 5, 7.) Plaintiff filed an affidavit stating that Waste Technologies was served on February 9, 2022.  (ECF No. 6.)  Subsequently, on April 14, 2022, Plaintiff filed a request for a certificate of default against all Defendants, based on their failure to answer or otherwise respond to the complaint.  (ECF No. 8.)  The Clerk of Court entered a certificate of default against both Sarker and Waste Technologies on April 18, 2022.  (ECF No. 9.)

Plaintiff thereafter filed a motion for default judgment on July 25, 2022, before filing a motion to stay the instant case on September 29, 2022, noting that Defendant Sarker had filed for bankruptcy protection in Connecticut.  (ECF Nos. 10, 11.)  This Court granted Plaintiff's motion to stay on September 30, 2022, and simultaneously denied Plaintiff's motion for default judgment without prejudice for failure to follow EDNY Local Civil Rules.

---

[2] Because Plaintiff has not addressed its entitlement to a declaratory judgment regarding ownership of the Machine in its motion for default judgment, the Court concludes that Plaintiff has abandoned this cause of action.  *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that although Plaintiff prayed for injunctive relief in its complaint, it did not request such relief in its motion for default judgment, and therefore the claim was deemed abandoned); *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *3 n.3 (E.D.N.Y. Dec. 9, 2019) (finding that claim alleged in the complaint, but not asserted in motion for default judgment, was abandoned).

(Docket Order dated September 30, 2022.)  Plaintiff subsequently refiled its motion for default judgment on November 6, 2022, alongside a motion to lift the previously entered stay.  (ECF Nos. 12, 13.)  The Court granted the Motion to lift the stay on November 7, 2022, in light of the dismissal of Sarker's Chapter 13 bankruptcy case.  (Docket Order dated November 7, 2022.)  Subsequently, Plaintiff's motion for default judgment, filed prior to the lifting of the stay, was terminated as improperly filed, and Plaintiff refiled the motion for default judgment on October 26, 2023.

This Court subsequently ordered Plaintiff to show cause as to why the action should not be dismissed for lack of subject matter jurisdiction on December 12, 2023.  (Docket Order dated December 12, 2023.)  The Court requested Plaintiff to identify each member of Plaintiff Eco-Fuels LLC and Defendant Waste Technologies LLC and properly plead facts establishing each member's citizenship as of the date the complaint was filed, and also requested Plaintiff provide additional factual evidence regarding monetary damages. (*Id.*)  Plaintiff responded to the Court's Order to Show Cause on January 2, 2024, and satisfied the Court that diversity subject matter jurisdiction was proper.  (*See generally* ECF 20.)

## LEGAL STANDARD

Pursuant to Rule 55, courts follow a two-step process to enter default judgment.  *City of New York v. Mickalis Pawn Shop, LLC*,

645 F.3d 114, 128 (2d Cir. 2011). First, when the defendant fails to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk of court enters the defendant's default. *See* Fed. R. Civ. P. 55(a). A court considers an entry of default against a party to be an admission of all the well-pleaded allegations in the complaint regarding liability. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Second, if the defaulting party fails to appear or move to set aside the entry of default under Rule 55(c), the opposing party may move the court to enter a default judgment to establish liability and damages. *See* Fed. R. Civ. P. 55(b)(2). Before entering a default judgment, the court "must ensure that (1) jurisdictional requirements are satisfied; (2) the plaintiff took all the required procedural steps in moving for default judgment; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020) (citations omitted).

Although the court accepts as true all well-pleaded factual allegations in the complaint, the court must still ensure the allegations provide a basis for liability and relief, and the court has discretion to require further proof of necessary facts. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). If the unchallenged facts establish the defendant's liability, the court determines

the amount of damages due. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999). The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.   Jurisdiction

Title 28 U.S.C. § 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires that all of the adverse parties in a suit be completely diverse with regard to citizenship." *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff Eco-Fuels, a New York LLC, alleges that both of its members are New York citizens. (Kahan Decl. at ¶¶7-10.) Plaintiff alleges that Defendant Sarker is the sole member of Waste Technologies LLC, a Delaware LLC, and that Sarker is a citizen of Connecticut. (*Id.* at ¶¶11-13.) Plaintiff alleges that it suffered damages of at least $200,000, the amount it paid Defendants under

9

the contract. (*Id.* at ¶14.) Thus, there is diversity jurisdiction between Plaintiff and Defendants. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("a limited liability company [] takes the citizenship of each of its members").

The Court may not enter a default judgment unless it has both subject-matter jurisdiction over the action and personal jurisdiction over each defendant. *See Covington Indus., Inc. v. Resintex A.G.,* 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity."). Under New York's long-arm statute, contained in New York Civil Practice Law and Rules ("CPLR") § 302(a), courts may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within [New York] or contracts anywhere to supply goods or services in the state," but only where the cause of action arises from the enumerated acts. CPLR § 302(a); *see Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007). Here, both Defendants were party to a contract to supply goods and services to Plaintiff, a New York LLC, and the contract included a choice-of-law clause providing for New York law to govern the contract. (Aff. Ex. A at 2.) The cause of action for the instant case is breach of the same contract, and as such, the Court finds that Defendants transacted business within New York and are subject

to the Court's personal jurisdiction. *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 594 (E.D.N.Y. 2011) (describing the factors considered to determine whether a non-domiciliary has transacted business in New York, including whether the defendant has an ongoing contractual relationship with a New York corporation and whether there is a choice-of-law clause in any such contract).

This Court may also exercise jurisdiction over Defendants to the extent they have consented to allow the Court to do so. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("an entity may contract or stipulate with another to permit proceedings in a state's courts, notwithstanding the remoteness from the state of its operations and organization"). Relevant to the instant case, "parties can consent to personal jurisdiction through forum-selection clauses in contracts." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 258 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). Here, the Contract includes a forum-selection clause stating that "[b]oth parties agree to submit to personal jurisdiction to a Federal or State court of competent jurisdiction sitting in and for the County of Kings in any action or proceeding arising out of this agreement." (Aff. Ex. A. at 2.) Both Sarker and Waste Technologies were party to the contract in question and thus this Court finds that Defendants are subject to its jurisdiction as regards any dispute arising out of the Contract.

11

## II.   Procedural Requirements

Before the court will enter a default judgment, the plaintiff must show that entry of default was appropriate, which itself requires showing that the defendant was effectively served with process. *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order).   Local Rule 55.2 imposes the additional requirements that the plaintiff attach certain materials to the motion and file proof that all motion papers were mailed to the defendant.

### A.   Service of Process

The Court finds that Plaintiff properly served each defendant with the summons and complaint.   Under the Federal Rules, service for a "corporation, . . . partnership, or other unincorporated association that is subject to suit under a common name" can occur "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."   Fed. R. Civ. P. 4(h)(1)(B).   Federal Rule of Civil Procedure 4(e)(1) and 4(h)(1)(A) also permits a party to effect service on an individual or corporate entity in accordance with the rules of the state where the district is located or where service is made.

As to Waste Technologies LLC, a Delaware LLC, it is unclear from the pleadings whether the company is authorized to do business in the State of New York.   In New York, where this Court is located,

serving a foreign LLC not authorized to do business in the state via the Secretary of State is proper "[i]n any case in which a non-domiciliary would be subject to the personal or other jurisdiction of the courts of [New York] under article three of the civil practice law and rules."  NY Limited Liability Company Law ("NY LLC Law") § 304(a).  Service via the Secretary of State is likewise proper for an authorized foreign LLC.  *Id.* § 303(a). The Court will proceed under the assumption that Waste Technologies is an unauthorized foreign LLC, as Plaintiff cites to NY LLC Law § 304 in its affidavit of process.  (*See* ECF No. 6.)

As discussed *supra,* the Court has found that Waste Technologies is subject to personal jurisdiction in New York pursuant to CPLR § 302(a); thus, it may be served in accordance with NY LLC Law § 304.  To properly serve a foreign LLC, three steps are required.  "First, service upon the unauthorized foreign limited liability company may be made by personal delivery of the summons and complaint, with the appropriate fee, to the Secretary of State."  *Glob. Liberty Ins. Co. v. Surgery Ctr. of Oradell, LLC*, 59 N.Y.S.3d 751, 753 (2d Dep't 2017) (citing NY LLC Law § 304(b)).  As provided in the affidavit of service, Plaintiff properly served the Secretary of State and paid the appropriate fee.  (*See* ECF No. 6.)  "Second, in order for the personal delivery to the Secretary of State to be 'sufficient,' the plaintiff must also give the defendant direct notice of its delivery of the

13

process to the Secretary of State, along with a copy of the process." *Glob. Liberty Ins. Co.*, 59 N.Y.S.3d at 753 (citing NY LLC Law § 304(c)(2)). Plaintiff complied with the second step by mailing, via registered mail, Waste Technologies' registered agent in Delaware[3] a copy of the summons and complaint, along with notice of the service on the Secretary of State. (ECF No. 6.) "Third, after process has been delivered to the Secretary of State and direct notice of that service has been sent to the defendant, the plaintiff must file proof of service," to include the "return receipt" from the registered mailing made as part of step two, to the clerk of the court. *Glob. Liberty Ins. Co.*, 59 N.Y.S.3d at 753. Plaintiff attached the return receipt, showing a delivery date of January 31, 2022, to its affidavit of service, properly completing step three. (ECF No. 6.) As such, Plaintiff properly complied with the requirements of NY LLC Law § 304 in serving Defendant Waste Technologies, and service was complete 10 days after filing the affidavit of service with the clerk of court.

---

[3] The Court may properly take judicial notice of public records. *See Haru Holding Corp. v. Haru Hana Sushi, Inc.*, No. 13-CV-7705 (RWS), 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016) (taking judicial notice of information provided by the New York State Department of State). The Court takes judicial notice of the public entity information provided by the Delaware Department of State, Division of Corporations showing that "Waste Technologies, LLC" has as its registered agent "The Company Corporation" with an address of 251 Little Falls Drive, Wilmington, DE – the address to which Plaintiff mailed process. *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (search conducted using entity name "Waste Technologies, LLC" which returns file number 5395420).

Regarding Sarker, The Federal Rules of Civil Procedure provide that an individual may be served via any means authorized by the state in which service is attempted or by delivering service personally, at the individual's dwelling, or to an authorized agent. Fed. R. Civ. P. 4(e). In the instant case, Plaintiff served the summons and complaint upon Sarker personally at his home address in Connecticut. (ECF No. 7, Kahan Decl. at ¶13.) Thus, Plaintiff properly served Sarker.

**B.   Entry of Default**

The Court next finds that the Clerk of Court properly entered a certificate of default against each defendant. Because Plaintiff filed its affidavit of service on February 9, 2022, (*see* ECF No. 6), service was complete "ten days after [the affidavit was] filed with the clerk of the court," *see* NY LLC Law § 304(e) - February 19, 2022. Thus, Waste Technologies was required to answer or otherwise respond to the Complaint by March 12, 2022. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Likewise, because Sarker was served on January 24, 2022, (*see* ECF No. 7), he was required to answer or otherwise respond to the complaint by February 14, 2022. When both Defendants failed to respond, Plaintiff filed a request for a certificate of default on April 14, 2022. (*See* ECF No. 8.) The Clerk of Court entered a certificate of default against both Defendants on April 18, 2022. (ECF No. 9.)

### C.   Local Rule 55.2

Local Rule 55.2(b) requires that a plaintiff attach to a motion for default judgment the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment. Local Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant.

Plaintiff's Motion for Default Judgment is supported by an affirmation that declares Waste Technologies and Sarker were served with all required documents at the addresses at which they were originally served. (*See* ECF No. 17 at 3.)   Likewise, Plaintiff's response to the Court's Order to Show Cause was supported by an affirmation that the response and its exhibits were served upon Defendants at the same addresses. (ECF No. 22.) Accordingly, Plaintiff has met the requirements of Local Rule 55.2(c).

## III. Liability

Having assured itself that the jurisdictional and procedural prerequisites to enter a default judgment are met, the Court now must assess whether Plaintiff's well-pleaded factual allegations establish Defendants' liability as a matter of law.

### A.    Choice of Law

The parties agreed pursuant to the Contract that their agreement "shall be governed by and construed under the laws of the State of New York." (Aff. Ex. A at 2.)  "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005).  Thus, this Court, sitting in diversity, is bound to apply New York law to determine the validity and scope of the choice-of-law clause.  When a choice-of-law provision exists "and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated." *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987) (citing *A.S. Rampell, Inc. v. Hyster Co.*, 144 N.E.2d 371, 379 (N.Y. 1957)). Plaintiff, a party to the Contract, is a New York limited liability company, and there is no evidence that enforcement of the choice of law provision would violate the fundamental policies of New York.  Accordingly, the Court will apply New York substantive law to Plaintiff's claims arising out of the Contract.

**B.    Breach of Contract Claim**

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted).   The Court finds that Plaintiff has alleged adequate facts to satisfy each of these four elements: (i) Plaintiff agreed to pay Defendants a total of $500,000 in exchange for Defendants building "a machine that converts assorted plastic into fuel" within six months of the signing of the Contract or sixty days of the signing of the Addendum (ii) Plaintiff performed under the parties' agreements by paying a total of $200,000, all payments required prior to a demonstration by Sarker that the Machine "properly functions," (iii) Defendants breached the agreements by failing to demonstrate a properly functioning Machine, and failing to deliver the Machine; and (iv) Plaintiff has been damaged in the amount of $200,000. (Kahan Aff. at ¶¶5-7, 15, 17-19; Aff. Exs. A, B.)   Thus, the Court finds that Plaintiff has sufficiently pled that the Defendants are liable for breach of contract.

The Court also finds that it is appropriate to hold both Defendants jointly and severally liable for any damages awarded to Plaintiff on its breach of contract claim because both Defendants signed the Contract and Addendum. *See Todtman, Nachamie, Spizz &*

18

*Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 457 (S.D.N.Y. 2007), *aff'd*, 316 F. App'x 51 (2d Cir. 2009) (entering judgment against corporate defendant and individual defendant jointly and severally on breach of contract claim where both were party to contract at issue). "Under the doctrine of joint and several liability, when two (2) or more defendants act together to cause an injury, each defendant is liable to the victim for the total damages." *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270 (SJF), 2014 WL 1220630, at *3 (E.D.N.Y. Mar. 24, 2014) (citing *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718 (2d Cir. 1978)). Both Sarker and Waste Technologies were party to the Contract and the Addendum, and both Defendants were referred to "[c]ollectively" throughout the Contract as "Doctor." (*See* Aff. Exs. A, B.) Thus, Defendants Sarker and Waste Technologies are collectively bound by the terms of the Contract and are jointly and severally liable for any damages incurred as a result of a breach of that agreement.

### C. Unjust Enrichment

The Complaint also asserts an unjust enrichment claim against the Defendants. The Court finds that this claim is duplicative of Plaintiff's breach of contract claim and therefore denies Plaintiff's motion as to the unjust enrichment claim.

"[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). Although Plaintiff has satisfied the unjust enrichment elements, "when a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (*quoting Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)); *see also Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501 (MKB), 2016 WL 1255726, at *3-4 (E.D.N.Y. Mar. 28, 2016) (collecting cases). Here, the Complaint alleges a valid contract that existed between the parties, which the Defendants breached, causing damage to Plaintiff. Because the dispute is "governed by a valid contract, Plaintiff is not entitled to recover on an unjust enrichment theory." *Cont'l Cas. Co.*, 2016 WL 1255726, at *4.

### D.  Fraud

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (internal quotation marks

and citation omitted).  In a diversity action such as this, "to comply with [Federal Rule of Civil Procedure] 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 290 (internal quotation marks omitted).  In addition, a fraud claim must also "allege facts that give rise to a strong inference of fraudulent intent."  *Id.*  A plaintiff may establish a "strong inference" of fraud "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

As an initial matter, Plaintiff's fraud claim is duplicative of its breach of contract claim.  "'[A] cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract.'" *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 275 (S.D.N.Y. 2019) (quoting *First Bank of Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (1st Dep't 1999)).  "But where 'the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract.'"  *Id.* (quoting *Fairway Prime Est. Mgmt., LLC v. First Am. Int'l Bank*, 952 N.Y.S.2d 524, 527 (1st Dep't 2012)).  Here,

the allegedly false promises on which Plaintiff bases its fraud claim "concern[] the performance of the contract itself[.]" *Id.*

Plaintiff alleges that Sarker falsely represented that he had the sole ownership rights to a company which owned patents related to converting plastic waste into fuel, and that those representations were made as a means to induce Plaintiff into entering into the Contract. (Compl. at ¶¶67-68, Kahan Aff. at ¶¶9-13.) The representations in question were made as part of the language of the contract itself, and therefore, Plaintiff's fraud claim is duplicative of its breach of contract claim. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (finding fraud claim duplicative of breach of contract claim where the defendant's allegedly fraudulent "representations were intended to lull [the plaintiff] into a false sense of security and ... amount[ed] to little more than intentionally-false statements by [the defendant] indicating his intent to perform under the contract"); *see also Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) ("Misrepresentations made to induce a party to enter a contract are not actionable as fraud . . . unless they are 'collateral' to the contract induced."). Because Plaintiff's fraud claim is duplicative of its breach of contract claim, it must be dismissed, and the Court need not analyze whether it would otherwise meet the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

**IV.  Damages**

Having determined Defendants' liability, the Court must determine whether Plaintiff has provided sufficient evidence to support its claims for damages, or whether a hearing is necessary to determine the amount of damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20-CV-1733 (AMD) (SJB), 2023 WL 5622067, at *8 (E.D.N.Y. Aug. 31, 2023) (internal quotation marks and citation omitted); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "is not considered an admission of damages" (internal quotation marks omitted)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (citation omitted).

In response to the Court's Order to Show Cause, Plaintiff has annexed a declaration of the managing member of Eco-Fuels which includes as supporting exhibits bank statements and photographs of checks reflecting the various payments made to Defendants pursuant to the Contract and the Addendum. (Decl. Exs. A-E; Kahan Decl. at ¶¶1, 14-19 (Kahan attesting to his knowledge of and the accuracy of the attached bank statements and photographs of checks).)  The Court finds that Plaintiff has met its evidentiary burden and that a hearing to determine damages is unnecessary because the submissions constitute a "sufficient basis from which to evaluate the fairness of" Plaintiff's damages request without the need for a hearing. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  The Court will next analyze the appropriate amount of contract damages and pre- and post-judgment interest, as well as Plaintiff's request for attorneys' fees and costs.

**A.   Contract Damages**

The breach of contract in this action relates to the Defendants' failure to deliver the Machine, which would purportedly convert plastic waste into fuel – a good governed by the Uniform Commercial Code. *See* N.Y. U.C.C. Law ("UCC") § 2-105 ("'[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale"); *see also id.* § 2-106 ("'Contract for sale' includes both a present sale of goods and a contract to sell goods

at a future time.")  Although the Contract in the instant case also included services such as training, when those services are "incident to the sale of goods," the contract is still "subject to the UCC." *KSW Mech. Servs. v. Johnson Controls, Inc.*, 992 F. Supp. 2d 135, 141 (E.D.N.Y. 2014) (citing *Richard A. Rosenblatt & Co., Inc. v. Davidge Data Sys. Corp.*, 743 N.Y.S.2d 471, 472 (1st Dep't 2002)).  Thus, the Court finds as a matter of law that the UCC applies to the Contract and the Addendum because they predominately involved a sale of goods, and any services were incidental to that sale.

"When a buyer contracts to purchase goods and the seller fails to deliver, UCC § 2-711(1) allows the frustrated buyer to recover, among other things, 'so much of the price as has been paid.'" *Ethereum Ventures LLC v. Chet Mining Co. LLC*, No. 19-CV-7949 (LLS) (KHP), 2021 WL 9036270, at *4 (S.D.N.Y. Oct. 20, 2021), *report and recommendation adopted*, 2022 WL 2531588 (S.D.N.Y. Jan. 28, 2022) (quoting *Kashi v. Gratsos*, 790 F.2d 1050, 1056 (2d Cir. 1986)). Plaintiff has provided evidence showing that it paid a total of $200,000, out of an overall purchase price of $500,000, to Defendants pursuant to the Contract and the Addendum, (*see* Kahan Decl at ¶¶14-20; Decl. Exs. A-E), and that Defendants failed to deliver the Machine by February 22, 2020, as promised, (*see* Kahan Aff. at ¶¶16-21, 35-37.)  Accordingly, Plaintiff is entitled to recover $200,000 as refund damages under the contract.

**B.    Pre-judgment Interest**

Plaintiff requests pre-judgment interest.  (Mem. at 12.)  In New York, "[a] plaintiff who prevails on a claim for breach of contract is entitled to pre-judgment interest as a matter of right." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 630 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)).  Under New York law, pre-judgment interest accrues at a rate of nine percent per annum and is calculated "from the earliest ascertainable date the cause of action existed ... to the date the verdict was rendered or the report or decision was made."  CPLR §§ 5001(b)-(c), 5004.  Courts calculate the "earliest ascertainable date" as the date of the contract breach.  *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (holding that "cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach").

In the instant case, the Court finds that the earliest ascertainable date that the cause of action existed was February 20, 2020, based on the Contract and Addendum.  Pursuant to the terms of the original Contract, the Machine was required to be built "within six (6) months from the date of this agreement," which, based on the signing date of October 4, 2019, would be April 4, 2020.  (Aff. Ex. A at 1.)  However, that deadline was

26

subsequently modified by the Addendum dated December 22, 2019, to require the Machine to be "one hundred percent (100%) buil[t] and functioning within sixty (60) days from the date Addendum B is signed." (Aff. Ex. B at 1.) Sixty days after December 22, 2019, is February 20, 2020, and Defendants were in breach of the contract when they failed to deliver the Machine by that deadline.

Plaintiff argues that pre-judgment interest should be computed from October 4, 2019, the date the Contract was signed, because Defendants made "material misrepresentation[s] to the Plaintiff and therefore defaulted under the Contract." (Mem. at 12.) Plaintiff's breach of contract damages are based not on fraudulent misrepresentations included in the contract itself, however, but rather on Defendant's failure to deliver a completed, functioning machine, as discussed *supra*. Accordingly, the Court, which is granted "wide discretion in determining a reasonable date from which to award pre-judgment interest," finds that February 20, 2020, the date Defendants failed to deliver the Machine, is an appropriate date to utilize for calculating pre-judgment interest. *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). Plaintiff is thus entitled to an award of pre-judgment interest at a rate of nine percent per year, $49.32[4] per day, calculated from February 20, 2020, through the date the Court enters judgment, for a total

---

[4] Yearly interest of $18,000 ($200,000 x 0.09) divided by 365 days.

of $72,352.44[5], assuming judgment is entered on the same date as this order – February 26, 2024.

### C.   Post-judgment Interest

Plaintiff also requests post-judgment interest.  (Mem. at 12.)  Post-judgment interest is mandatory and governed by federal statute.  *See* 28 U.S.C. § 1961(a).  Therefore, the Court finds that Plaintiff is entitled to post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), and calculated from the date the Clerk of the Court enters judgment in this action until the date of payment.

### D.   Attorneys' Fees and Costs

Plaintiff also requests attorneys' fees and costs, to be determined at an inquest.  However, the Court finds such an inquest to be unnecessary, because, as compared to pre-judgment interest, "[t]here is no similar right to an award of attorney's fees on an ordinary claim of breach of contract." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991).  Plaintiff argues that it is entitled to attorneys' fees based on the indemnification provision in the Contract, which reads in relevant part as follows:

> [Defendants Waste Technologies and Sarker] hereby agree[] to indemnify, hold harmless and defend [Eco-Fuels] its employees, officers, directors, attorneys, agents, successors and assignors against any and all expenses, costs of defense (including, without limitation, attorneys' fees, witness fees, damages, judgments, fines and amounts paid in settlement) and any amounts [Eco-Fuels] becomes legally obligated to pay

---

[5] Daily interest of $49.32 multiplied by 1,467 days.

because of any **claim or claims against [Eco-Fuels]**, to
the extent that such claim or claims (i) result from
[Defendants'] acts or failure to act under this
agreement, (ii) arise out of the breach or alleged breach
of this agreement or any representation by [Defendants]
hereunder . . .

(Aff. Ex. A. at 3 (emphasis added).) Plaintiff misreads the
indemnification clause, however, which the Court finds applies
only to claims *against* Plaintiff that Plaintiff is legally
obligated to pay, and not to a claim brought by Plaintiff against
Defendants for breach of contract.

"[W]hile parties may agree that attorneys' fees should be
included as another form of damages, such contracts must be
strictly construed to avoid inferring duties that the parties did
not intend to create." *Oscar Gruss & Son, Inc. v. Hollander*, 337
F.3d 186, 199 (2d Cir. 2003) (citing *Hooper Assocs., Ltd. v. AGS
Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989)). As a result,
under New York law, "'the court should not infer a party's
intention' to provide counsel fees as damages for a breach of
contract 'unless the intention to do so is unmistakably clear'
from the language of the contract." *Id.* (quoting *Hooper Assocs.,
Ltd.*, 548 N.E.2d at 905). The Court reads the section of the
Contract excerpted above as referring only to third-party claims
against Plaintiff, given the reference only to indemnification for
claims *against* Eco-Fuels. *See Bourne Co. v. MPL Commc'ns, Inc.*,
751 F. Supp. 55, 57-58 (S.D.N.Y. 1990) (a contract did not extend

29

indemnification to actions between the parties when the agreement did not expressly indicate such an intention).   There is no language in the Contract that obligates a party to pay attorneys' fees to the other.   Because it is not "unmistakably clear" from the language of the Contract that attorneys' fees were intended to be included as another form of damages for a breach, this Court will not infer the parties' intention to do so.   Thus, the Court finds that an award of attorneys' fees is not appropriate in the instant case.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is granted in part and denied in part.   The Court grants default judgment as to Plaintiff's breach of contract claim and denies default judgment as to its other claims.

Default judgment is entered against Defendants, jointly and severally, and Plaintiff is awarded (i) contract damages of $200,000; (ii) pre-judgment interest at the daily rate of $49.32, calculated from February 20, 2020, through the date the Court enters judgment, for a total of $72,352.44 as of February 26, 2024; and (iii) post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date of the entry of judgment until the date of payment in full.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order.   Plaintiff is ordered

to serve a copy of this Memorandum and Order and the Judgment on Defendants and file declarations of service for each defendant within two days after the Clerk of Court enters the Judgment.

**SO ORDERED.**

Dated:      February 26, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

31